Good morning, counsel, and you may proceed. Thank you. Thank you, Your Honor. Bob Ward on behalf of VELEX, the epilogue and punitive contender I have with me this morning, the principal of VELEX, Mr. Alexandrov. Appeals of contempt are among the most important cases that appellate court is called upon to decide. That's because an error in a contempt case strikes at the very foundation of justice. Here, there was no contempt. The record is indisputed that VELEX, a two-man corporation, had spent more than $50,000 attempting to comply with the injunction in this trademark case, along with hundreds of hours of their own time. That figure has grown now to $299,000, not including loss of sales. The court found that there had been supposedly $1,500 in what he called damage to goodwill. Well, goodwill can only inherently be defined as that which affects the public. Again, it's indisputed that there were three boxes that got through here, three infringing boxes, and they were all purchased by agents for planation. So where's the damage to goodwill? There was none. Whereupon, the district court then entered an order for $45,000 in attorney's fees, which is more than 30 times the amount of this supposed damage to this non-existent damage to goodwill. Again, the record is absolutely clear, and there is no contrary evidence. The court also found in error that purportedly this $50,000 of work and hundreds of hours of time by the wives and children of this tiny corporation had been spent supposedly in merely taking the infringing boxes, maintaining the infringing outer box, and then just putting them into a plain box. There's no support in the record for that finding at all. Also, significantly and throughout this contempt order, I mean Let me ask the question this way. Yes, sir. We review the district court's findings of facts for clear error, and we review the ultimate decision for abuse of discretion. I want you to help me with where there was a clear error in fact finding on the part of the district court. Among other things, the district court said that your client did not take all reasonable efforts to comply. The district court said that after the injunction issued, Velex took over two weeks to direct capacity, remove the products from the infringing packaging and place the products into plain boxes, and that Velex did not make any effort to verify compliance with the system, which Velex said was a new system with which capacity employees were not familiar until after Velex was notified that capacity was still infringing. And he goes on to point out that it took seven weeks after the injunction for you to go ahead and direct capacity to stop shipping. But by then, capacity had already shipped some infringing goods, both the Karsten and Thornton. Where is the clear error in the fact finding by the court? There is no support for any of that. The district court also failed to make Rule 52 findings a fact, and all the district court did was throw out these conclusions citing nothing in the record, and there is nothing in the record to support that whatsoever. The fact is that the district court was shown work orders, screenshots, receipts for reboxing, a timeline. What happened here was they immediately contacted Amazon and took down their webpage from Amazon. Amazon had 800 units in stock. Amazon, however, has what is called trademark protection. Isn't one of the problems that the webpage that they put up that they could have immediately looked at it and seen the problem, they had to wait for the opposing party to discover the problem? They immediately took down the webpage to the extent that they could, but however, Amazon's trademark protection put the Gorilla Gym mark back on by default. That's called trademark protection. Whereupon, they met with Amazon, and it was again taken down, that time permanently. Amazon then shipped the boxes to the Fulfillment House capacity, and three boxes got through. Capacity admitted in the record that they had made a mistake. Capacity, by the way, is not an agent. Amazon is not an agent. So the district court found VELEX guilty of contempt for these unauthorized actions of non-agents that were against specific instructions to the contrary. As a matter of law, that's not respondeat superior. There should be no contempt by someone whose instructions are not followed, and particularly, we asked what else could be done. The district court said in a conclusory fashion, well, they could have done other things. Well, like what? What? They couldn't have done anything else. The resources of this company, this is not Amazon. This is not General Motors. This is a tiny two-man company that spent $50,000, sent their wives and children over to Reeboks, and then they're stuck with this $1,500 of damage to goodwill. What damage to goodwill? It doesn't exist. Again, to reiterate, all three of these boxes were purchased by agents for Play Nation. There couldn't be any damage to goodwill. All else is innuendo and speculation, and that's what is behind the district court's order here. No Rule 52 analysis, no citation to the record, mere conclusions, innuendo, and speculation, and I submit to you that a finding of contempt should not be based on something like that. If the Court has no further questions, I'll respectfully reserve the balance of my time. Humanty, thank you. Thank you. May it please the Court. My name is Mark Hershovitz, and I'm here, and I represent Play Nation Play Systems, the manufacturer of Guerrilla play sets. Play Nation obtained a verdict at trial of trademark infringement, and as part of the district court's disposition of the case, the district court entered a permanent injunction. That permanent injunction prohibited the defendant from distributing and selling product branded with the infringing mark which was Guerrilla Gym. After the district court entered its order, the defendant filed an emergency motion. That emergency motion asked for extraordinary relief to be able to sell the product for a period of time because they already had... Court denied that, correct? Correct. We are aware of the facts. And after that was denied, the defendant began selling the product, that which the court prohibited. In the court's order denying that motion, the court pointed out if there had been a first sale, that the people who had purchased the product could resell it. And so what the defendant did is the defendant changed its name on its Amazon storefront and continued to sell the product. Then the defendant rebranded, and Play Nation had some, we will call mystery shoppers, so to speak, in various locations around the country, and they Gym won. But when the product was shipped, the product that the people received, Mr. Karsten, Mr. Thornton, Ms. Gabady, the product that they received was Guerrilla Gym branded product. They opened the box and they get the infringing product. That's why Play Nation filed its motion for a citation for contempt. That's why we're here. Play Nation made out a prima facie case. A prima facie case is what is necessary to allow the district court to infer the facts at issue. At that point in a contempt context, the burden of proof shifts to the alleged contemnors, and they have an obligation to show that they made all reasonable efforts to comply. Now, this court has held that all reasonable efforts is a substantially high showing that they have to make. The size of the defendant, that they might be a two-person company, is irrelevant. They have to make all reasonable efforts, and it's very easy here for the defendant to have made those efforts. You stop selling the product. This product was in the possession of, without question, the defendant's agent, and the defendant's agent delivered the product. So the way it worked was Amazon had the front end. The individual purchased. That order was transmitted to the defendant. The defendant's responsibility in the e-commerce transaction was to deliver the product, to ship the product. And that's what the defendant did here, and the violations were consistent and persistent that there was four purchases, actually. The first purchase was by Mr. Karsten. It was shipped. He got infringing goods. The second purchase was by Mr. Thornton. It was shipped infringing goods to him. The third purchase was by Rachel Gabady. Rachel Gabady is an officer of this court. She's an attorney in Florida. She purchased the items, ordered the items, supposed to be Jim 1, and she received in October, after the contempt motion had already been filed, she received infringing goods. The other purchaser was an individual by the name of Dan Goldeyer. He purchased it from directly from the defendant on their website, not through Amazon. And it was shipped to him, and then Planation filed its motion, and all of a sudden he had been receiving FedEx update notifications about the tracking of the package. He got a notification that the product was recalled by the shipper. There's only one reason that was recalled by the shipper, and it's very easy to figure out what that was. And so a prima facie case was made out, and the defendant had an obligation to rebut it. And we had a four-hour hearing before the district court, and the district court heard evidence, and the district court reached its conclusions. One particularly important piece of evidence is that if these were isolated errors, which we contend that they were not, they were consistent and persistent, but if these were isolated errors, the defendant could have, but did not, introduce evidence of compliance with the order, meaning people who were shipped and could testify as to receiving orders that were not branded Gorillajim. The defendant who had the burden of production and the burden of persuasion did not introduce that. And so very clearly a prima facie case has been made, a clear and convincing evidence standard case has been made, and the defendant has not shown, you can believe everything that the defendant has said, that they spent $50,000, that they did massive efforts. But this court has held that substantial efforts, good faith efforts, to use the defendant's term, massive efforts, are not sufficient. The only benchmark is all reasonable efforts, and capacity is their agent. The defendant has the ability, the defendant asks capacity to ship, store, and ship the product. Capacity agrees to ship and store the product on the defendant's behalf, and the defendant has the ability to control capacity's actions. That capacity, if you want to believe- Did the country court come up with a figure of $1,500 in compensatory damages? During the hearing there was testimony that the defendant sold 159 units of product. I believe the defendant's breakdown was 40 of that was children's playset equipment. There was a colloquy in the middle of the hearing about how the court wanted to proceed, whether the court wanted to order discovery. And so we said we would plow ahead without the need to have a discovery period and take up more judicial resources. And so based on those figures, 159 units, 40 of them were alleged by the defendant to be children's products. That falls within the range of abuse of discretion. I cannot speak to a mathematical calculation. The judge didn't do that in court. Saying $1,500 was based on possibly 40 units of infringing material being sold. 40 to 159 units of- 40 to 159. Right. Because you're saying just because the folks that you knew that ordered it doesn't mean other people didn't get the same materials that your people got. Right. Correct, Your Honor. The burden shifted in a contempt context. The burden shifted to the defendant to prove reasonable efforts and compliance once the prima facie case is made. That's different in a normal trial context. In a normal trial context, the burden of proof rests with the plaintiff. But in a contempt context, there's something- the burdens are flip-flopped after a prima facie case has been made. The other thing I wanted to touch upon is the jurisdiction of this court with regards to the contenders. The district court found the defendant and the defendant's two sole shareholders, principal officers, directors of the company, all to be in contempt. And the notice of appeal that was filed in this case was filed saying, Defendant Velex hereby appeals. Under the Federal Rules of Appellate Procedure, Rule 3, under the Supreme Court's decision in Torres, the principals of the company, Mr. Alexandrov and Mr. Velekin, have not appealed. That the trial court's, the district court's decision as applied to them is final, and this court lacks jurisdiction to address that. Also, under the district court's decision is final as to the finding of contempt because the defendant did not timely file a notice of appeal of the district court's contempt finding. That the time period for an appeal begins to run if the- when the district court enters the judgment, the separate judgment document, and you have 30 days from that date, or if the separate judgment document is required, which it is in this case- The final decree when he actually set out the amount of fees and costs to be awarded as part of the contempt. The final decree is- I always thought that in order, awarding attorneys' fees is not final until the amount to be awarded is also determined, and it wasn't here until later in the day. So I'm not sure I understand the thrust of the argument. The thrust of the argument is you have to separate out the contempt finding, the $1,500 finding, from the attorneys' fees finding. That the contempt finding, the underlying merits, and there's a Supreme Court case on this point that the Supreme Court has created a bright-line rule that attorneys' fees determinations can trail a merits decision. No question about it. What we're looking at, though, is whether or not the appeal was filed timely. And I'm simply asking whether they could have filed an appeal before the award of attorneys- the attorneys' fees and costs had been assessed as to a specific amount. Or are you saying, oh, yeah, well, we should have taken up the contempt issue and liability first, and then had a second hearing to take up the other issue? I'm saying the- Is that what you think the law requires? That we piecemeal the appeal? Your Honor, the U.S. Supreme Court has said that, and it was not cited in the briefs because it wasn't necessary as a response brief, but I'd be glad to present- Is your answer yes, we have to take it up piecemeal? You have to take up the merits appeal when the merits appeal is ripe and jurisdiction is appropriate. And I agree, the notice of appeal is timely as to the attorneys' fees award. But that notice of appeal is only timely as to the defendant vellex, because no notice of appeal has ever been filed on behalf of- Well, that's a different question. That's not a question of timing. That's a question that goes to who is actually filing the appeal. Correct. Unless the panel has any further questions. Thank you very much. Thank you. Just to, Your Honor, just to put to bed this one point. The rights of the agents here, the owners of the company are inextricably intertwined with the rights of the principal. So the appeal of the principal inherently involves the appeal of the agents. Of course, all you had to do is take an appeal, not just the name of the company, but in the name of the two individuals as well. And that problem wouldn't be here. That's true, and it was a little confusing. And maybe they were in privity. It may be they were inexplicably bound up. It may be they were jointly and severally liable. But the fact is that the appeal was only taken in the name of vellex. Sure, and I believe the reason that that happened was the original judgment of the court did not include as contenders the two agents. Right, and that changed, and then he added the two names. Yeah. And let's focus on a very salient fact, and that's that PlayNation here reads the word reasonable out of the standard. They pretend that nothing, that no efforts of any kind would ever be sufficient. And I think PlayNation here stands exposed. They've been punitive throughout. Their original motion for contempt asked for criminal contempt and that these two gentlemen be confined to prison for criminal contempt on these three boxes that got through. Let's focus again on the— The district court rejected that. Yes, yes. I don't think you have to argue the point about criminal contempt. Yeah, the district court was right on that. And let's focus on the $1,500 again that the question was asked. One question I did have for you. Yes, sir. If I heard Mr. Hershkowitz's argument, he said there were four people that got the infringing products, not three. Yeah. Is that right or wrong? I think that's correct, and I think the last one was sent back. But four were sent out with the wrong label on it. Yeah, and all the agents of PlayNation, so there's no damage to goodwill. And the question was also asked— About the 40 others, the 40 children's play set equipment that may have been sent out as well. They just say, we were able to show and meet our burden, our initial burden of persuasion that you were in civil contempt because at least four instances they were sent out erroneously. There may have been more. Indeed, there may have been as many as 40. We don't know. But at this point, the burden of going forward plainly shifts to you to show what you did and what you couldn't do and why you took all reasonable steps. Yeah, I think that's true. You don't disagree with that being the modality of analysis. In part, I do, Your Honor, because the burden of going forward— You didn't think the burden of going forward shifted to the putative contender to come back and show either compliance or an inability to comply on a civil contempt sanction? Oh, yes, I agree with that. Ask the three boxes, but not ask the 40 or 1,000 or a million or some other speculative number that's not supported by the record. There are three net here, three. And all right, four. But it would have looked good for you, would it not, if you had come forward with evidence that of the other things that were shipped, you were in compliance. That would have been helpful, would it not? To prove a negative, I'm not sure that the shifting of the burden goes to that. I bet if you could have proved it, you would have, wouldn't you? Well, what we did prove was that on August 2, the order went out to the Fulfillment House not to ship anything that says guerrilla gym. And they disobeyed that order. And when it was found out that they had disobeyed, immediate action was taken. And, yeah, there are probably other areas of evidence that could have gone into. But the question is, what was reasonable to have been done? And counsel argues that you can separate the idea of reasonableness from the resources that are available to carry out that reasonableness. That's not a reasonable argument. The argument was not simply to take reasonable efforts to comply, but rather the modifier required you to take all reasonable steps. All reasonable. That's the statement of the law, is it not? Yes, sir, it is. All reasonable steps, yeah. So, once again, and just to reemphasize, we've got a conclusory order here, an order that does not comply with Rule 52. Gives no hint as to what else could have been done. There's speculation piled upon speculation. There's no showing of any damage to goodwill. Figures are pulled out of the air. And we have, ultimately, an order for $45,000 in attorney's fees where they could have called. They say, well, we didn't have a duty to call you and point out this error. Well, maybe not, but they could have. So, the question becomes $45,000. Is there any case anywhere that ever held that they had an obligation to attempt to work out the matter with VELEX before filing a civil contempt motion? No, I don't think they had that duty. But I think that when you're talking about It might have been a reasonable thing to do, but they weren't obligated by law to do it. No, but I think when you're talking about what's reasonable attorney's fees and you have a supposed $1,500 damage that's not a damage to goodwill at all and you're assessing somebody $45,000, I think the equitable thing to do is to look at the entire record at that point. Because they created their own attorney's fees. You didn't contest the number of hours or the dollar amount. No, these are fine lawyers. Absolutely not. No, that was no problem there. Thank you much, counsel. Thank you both for your efforts. We'll take this case under advisement. We will be in recess until 9 a.m. tomorrow morning.